**UNITED STATES of America, Plaintiff,**

v.

**Michael C. KOVALESKI, Defendant.**

**No. 48605.**

United States District Court, E. D. Michigan, S. D.

Jan. 19, 1976.

Michael D. Gladstone, Asst. U. S. Atty., Ralph B. Guy, Jr., U. S. Atty., Detroit, Mich., for plaintiff.

Philip A. Gillis, Gillis & LaRose, Detroit, Mich., for defendant.

## MEMORANDUM OPINION

CHURCHILL, District Judge.

The defendant is charged with conspiracy to import marihuana, importation of marihuana, and possession of marihuana with intent to distribute. There was a trial at which the defendant testified. On September 18, 1975, this Court declared a mistrial when one of the jurors died after jury deliberations had begun, and the defendant declined to waive his right to a twelve-person jury. Subsequently, the government notified the Court that it intended to continue the prosecution. On November 19, 1975, Michael Gladstone, an Assistant United States Attorney, called James Maurice before a grand jury. Mr. Gladstone had acted as prosecutor at the trial, and it is the Court's understanding that he will act as prosecutor at the upcoming trial. Mr. Maurice was named in the indictment as an unindicted co-conspirator, and it is apparent from the evidence adduced at the trial that he could provide testimony relevant to the charges against the defendant. He did not, however, testify at the trial. At the time of the trial, Mr. Maurice was in federal custody at the Milan Federal Correctional Institution.

Counsel for the defendant learned that the government had subpoenaed a witness before the grand jury in connection with the case. He then moved for an order enjoining the United States Attorney from subpoenaing witnesses before the grand jury for the purpose of trial preparation. At the hearing on the motion, counsel for the defendant expanded the nature of the relief prayed for by requesting that the Court issue an order prohibiting the government at the upcoming trial from calling Mr. Maurice as a witness or using in any way any evidence obtained from Mr. Maurice. In its response to the motion, the government indicated that Mr. Maurice had been called before the grand jury in connection with a possible perjury and obstruction of justice indictment against Mr. Kovaleski.* At the hearing Mr. Gladstone indicated that he deemed it necessary to call Mr. Maurice before the grand jury at that time because of the fact that Mr. Maurice was about to be released from federal custody and might not be available to the government at a later date. He also indicated that he would not be calling any more witnesses before the grand jury. At the conclusion of the hearing, the Court took the motion under advisement.

In an order dated January 12, 1976, the Court requested that the government provide for the Court's in camera review a transcript of the grand jury testimony of Mr. Maurice. The government complied with this order on January 13, 1976. The Court has read this transcript.

The pendency of a prosecution does not prevent the government from calling witnesses before a grand jury to investigate the possible commission of other offenses. But the calling of witnesses before a grand jury for the dominating purpose of gathering evidence for use in a pending case is improper. *United States v. Sellaro,* 514 F.2d 114 (CA8 1973); *United States v. George,* 444 F.2d 310 (CA6 1971); *United States v. Dardi,* 330 F.2d 316 (CA2 1964). This Court must determine what the dominating purpose of the government was.

This Court has no direct reason to disbelieve the fact that the government

* The transcript disclosed that Mr. Gladstone told the witness that the government felt that Kovaleski had committed perjury.

was investigating the possibility that the defendant had committed perjury, although the timing of a perjury investigation was at least unusual. A reading of the grand jury transcript discloses that inquiry was made of Mr. Maurice concerning the relationship between the defendant and the co-conspirators and the extent to which the defendant was involved in the conspiracy to import marihuana. It should be noted that at the trial the defendant did not dispute the existence of a conspiracy to import marihuana or the fact that he was acquainted with some of the co-conspirators. The issue at trial involved the nature of the relationship between the defendant and the co-conspirators and the extent to which the defendant was involved in the conspiracy. The defendant's testimony centered on these issues. Questioning Mr. Maurice about these same issues would be appropriate in an investigation to determine whether the defendant committed perjury at the trial.

But that is not the end of the inquiry. The "dominating purpose" test presupposes that the government can have more than one purpose in calling a witness before the grand jury. The questioning of Mr. Maurice was also relevant to investigation of the substantive offense. Certainly the government's primary concern was the upcoming trial. The same Assistant United States Attorney was involved in the perjury investigation and the trial. This Court infers from the circumstances that one of the government's purposes in calling Mr. Maurice before the grand jury was to strengthen its trial presentation if possible.

Which of these purposes was the government's "dominating purpose"? In the context of this case this question cannot be answered from reading the transcript. To the extent that the questioning of Mr. Maurice was relevant to a perjury investigation, it was also relevant to an investigation of the substantive offense. This would not always be the case. If the defendant were being

investigated as to an offense other than perjury at his trial, a determination of the government's "dominating purpose" might be made by looking at the subject matter that the government inquired into at the grand jury proceeding. Such a determination is not possible where the underlying facts sought to be established in both investigations are identical.

One possible solution would be to put the burden on the defendant to persuade the Court that the "dominating purpose" was improper. This would necessarily require disclosure of the grand jury transcript to the defense counsel; and more often than not, counsel would only be able to present the same dilemma.

The practical result of fixing the burden on the defendant would be that whenever a defendant testified at a trial, denying his guilt, and a mistrial resulted, the prosecution could with virtual impunity call witnesses before a grand jury to strengthen its case on re-trial on the pretext that the defendant was being investigated regarding a possible perjury charge. This result would not be in keeping with the courts' duty to safeguard vigorously the integrity of the grand jury process. A grand jury serves a useful function in investigating criminal activities and in identifying persons to be charged; but given the secret nature of grand jury proceedings and the power of the prosecution to influence the thrust of a grand jury inquiry, the potential for prosecutorial abuse is always present.

A special problem is inherent in this type of situation, whatever the prosecution's "dominating purpose" may be. If, prior to the second trial, potential witnesses are called at a perjury investigation, their ardor for telling the truth as they understand it to be, especially if inconsistent with the government's view of the facts, may well be chilled.

The only practical solution is to put the burden on the prosecution to persuade the Court that its "dominating purpose" is proper. Not only will this protect the integrity of the grand jury process, but it will also fix the burden on

the party that has in its power the ability to avoid the problem altogether by adjusting the manner and timing in which it conducts its grand jury investigations. In this case the government has not met the burden of convincing the Court that the "dominating purpose" of calling the unindicted co-conspirator before a grand jury was not to obtain evidence for use at the upcoming trial, or at least to obtain an impeaching document if the witness was called by the defense.

The Court therefore finds that the government has acted improperly. An appropriate remedy must be fashioned. The remedy must fit the circumstances of the particular case. In *In Re National Window Glass Workers*, 287 F. 219 (E.D.Ohio 1922), the issue of the impropriety of calling witnesses before a grand jury to gather evidence for use in a pending case was raised in a motion to vacate the subpoenas. The court found for the movants and vacated the subpoenas. Here, the subpoena has been served, and the witness has testified before the grand jury. At this point, the only effective remedy is to prohibit the government from profiting in any way from the calling of Mr. Maurice before the grand jury. The government, therefore, may not call Mr. Maurice as a witness at the upcoming trial. Such a remedy was suggested in *United States v. Doe (Appl. of Ellsberg)*, 455 F.2d 1270 (CA1 1972). If Mr. Maurice is called as a defense witness, the government may not use the grand jury transcript of his testimony to impeach or to refresh memory. After reading the grand jury transcript, it does not appear to the Court that the government uncovered any new evidence; but if any such evidence was uncovered, the government should so inform the Court.

It will be so ordered.