OPINION OF THE COURT
Lawrence J. Tonetti, J.
Dellwood Foods, Inc. (Dellwood), has been indicted (Bronx County Indictment No. 976/81) for violation of sections 340 and 341 of the General Business Law (the Donnelly Act). It is alleged that Dellwood, along with other indicted corporations, individuals and unindicted cocon- . spirators, combined in restraint of trade and competition. Subsequent to the filing of this indictment (March 27, *264 1981) the Attorney-General issued subpoenas pursuant to his investigatory powers under section 343 of the General Business Law commanding the appearance of three of Dellwood’s sales personnel. Dellwood now moves to quash these subpoenas pursuant to CPLR 2304, maintaining that the issuance of postindictment subpoenas is an abuse of process. This court has read the Grand Jury minutes, taken an in camera offer of proof as to the purpose of the subpoenas from the Attorney-General, and has had the benefit of excellent legal briefs and oral argument furnished by counsel, and decides this motion as follows.
Preliminarily, it must be decided if a corporation has standing to move to quash a subpoena directed not to the corporation itself, but its employees. It must be noted that none of the subpoenaed individuals has given any indication that they wish to resist compliance.
It cannot be disputed that a criminal defendant may not vicariously assert the abridgement of another’s personal right and then seek the remedial benefits the law provides for such violation (see on Fourth Amendment violations, United States v Miller, 425 US 435; Rakas v Illinois, 439 US 128; United States v Salvucci, 448 US 83; Rawlings v Kentucky, 448 US 98; United States v Payner, 477 US 727; and on Fifth Amendment violation, Bellis v United States, 417 US 85; Couch v United States, 409 US 322). This body of case law concerns the proper application of the exclusionary rule in instances where it is not the defendant whose rights have been violated.
Yet, on the instant facts these cases are not dispositive for here petitioner maintains that it is, in fact, a violation of Dellwood’s rights that is being asserted. In Rakas v Illinois (supra, p 139) the Supreme Court recognized that the rule it fashioned for Fourth Amendment violations wás more restrictive than that generally employed in determining standing: “It should be emphasized that nothing we say here casts the least doubt on cases which recognize that, as a general proposition, the issue of standing involves two inquiries: first, whether the proponent of a particular legal right has alleged ‘injury in fact,’ and second, whether the proponent is asserting his own legal *265 rights and interests rather than basing his claim for relief upon the rights of third parties.”
The principal application of this “general proposition” has been to determine the standing of an individual to bring a lawsuit or attack the constitutionality of a statute (see Singleton v Wulff, 428 US 106; Griswold v Connecticut, 381 US 479; Eisenstadt v Baird, 405 US 438; Barrows v Jackson, 346 US 249; Doe v Bolton, 410 US 179). However, logic indicates that application here would be appropriate.
Dellwood here alleges that as an indicted defendant its rights are being invaded by the further issuance of subpoenas, whose purpose is the gathering of evidence for the pending trial. There can be no doubt that the issuance of postindictment subpoenas, whose sole or predominant purpose is to gather evidence for a pending trial, is an abuse of process (Matter of Hynes v Lerner, 44 NY2d 329; United States v Dardi, 330 F2d 316; United States v Fahey, 510 F2d 302; United States v Fisher, 455 F2d 1101; United States v Star, 470 F2d 1214). Therefore, Dellwood does allege an “injury in fact” in that if the subpoenas were issued for the purpose it suggests, Dellwood’s right to a fair trial would be affected.
This court also concludes that Dellwood’s claim for relief is based on an assertion of its own rights. The subpoenaed salespeople here would have no interest in protecting Dellwood from abuse of process. In fact the potential for an immunity grant may make their interest diametrically opposed to those of Dellwood.
In such a situation, it is only the indicted party who has an interest to be protected. In this regard the logic of the Third Circuit in United States v Genser (582 F2d 292) is instructive. The case involved continued issuance of Internal Revenue Service summonses to third parties after a tax investigation became purely criminal. Preceding decisions by Supreme Court had indicated that the Internal Revenue Service had Federal statutory authority to issue such summonses until the investigation became purely criminal and had defined the purely criminal stage as commencing when the investigation was referred to the Department of Justice (Reisman v Caplin, 375 US 440; Donaldson v *266 United States, 400 US 517; United States v LaSalle Nat. Bank, 437 US 298). The Genser court stated (supra, pp 305-306):. “In the instant case, however, appellants’ standing to challenge administrative summonses derives not from the Fourth Amendment, but rather from a federal statute, § 7602, and from the gloss placed upon that statute by the federal courts. We think that in consistently holding that the IRS may not use administrative summonses to gather evidence in an exclusively criminal investigation, the courts from Reisman and Donaldson onward, up to and including LaSalle, have identified a protectable interest in the taxpayer not to be the target of an exclusively criminal investigation in which government agents have acted beyond their statutory authority *** While the third party recipients of summonses may well be motivated to refuse to comply on the grounds that the summonses are overbroad or unreasonably burdensome *** there is little reason to expect them to raise the defense that the summonses were issued to further a solely criminal investigation of the taxpayer * * * This is not a matter of the third party bank’s interest, but of the taxpayer’s. Thus, the courts have provided that the taxpayer may challenge the validity of a summons issued to a third party either at the investigatory stage or, if necessary, at the trial level.”
While the Third Circuit obviously is construing an entirely different statute than that here involved, the parallels are equally obvious. As Dellwood has been indicted, it too should be afforded a “Protectable interest” in preventing government agents from exceeding their statutory authority. Further, this interest is uniquely Dellwood’s as none of the subpoenaed witnesses would have reason to raise the defense here asserted. In addition, the Federal courts have granted standing in cases involving the abuse óf Grand Jury process (United States v Doe, 455 F2d 1270; Matter of Grand Jury Proceedings, 632 F2d 1033).
Authority for a standing grant may also be found under the particular statute pursuant to which this motion is brought. The Practice Commentaries under CPLR 2304 state as follows: “The motion to quash may be made in behalf of the witness (who if not a party will usually not have his own attorney to represent him) by one of the *267 parties.” (Siegel, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C2304:l, p 218.) Cases under the section hold that a “party affected” may move to quash (Matter of Roden, 200 Misc 513; Beach v Oil Transfer Corp., 23 Misc 2d 47). In the instant case it must also be remembered that the subpoenaed witnesses came upon the information desired only through their employment by Dellwood. The courts of this State have afforded third-party standing to employers where the subpoena was directed at their employees (see Beach v Oil Transfer Corp., supra, attorney subpoenaed; Cataldo v County of Monroe, 38 Misc 2d 768, insurance company subpoenaed; Matter of Ellis, 176 Misc 887; Matter of State of New York Comm. on Governmental Operations of City of N. Y. v Manhattan Water Works, 10 AD2d 306, accountant subpoenaed).
Finally, even if this court had concluded that Dellwood should not be afforded standing it would proceed to the merits of the motion. Clearly, this court’s decision will be the subject of immediate appellate review regardless of result. By reaching the merits this court provides a full basis for appellate review without need for remand. Under all the circumstances, this seems the appropriate course for a court of trial level jurisdiction.
Proceeding to the merits it becomes readily apparent that statutory authority and case law must be reconciled. The Attorney-General issued the subpoenas here in question under authority of section 343 of the General Business Law. That section in addition to authorizing investigation of antitrust matters by the Attorney-General, provides in part: “Such power of subpoena and examination shall not abate or terminate by reason of any action or proceeding brought by the attorney general under this article.” This authority to continue investigating after a civil antitrust action has been commenced, has been consistently upheld by the courts of this State (Matter of Grandview Dairy v Lefkowitz, 76 AD2d 776; State of New York v Mobil Oil Corp., 40 AD2d 369, affd 33 NY2d 627; People v Anaconda Wire & Cable Co., 19 AD2d 867; Long Is. Moving & Stor. Assn. v Lefkowitz, 24 AD2d 452). However, it is not an unbridled power and subpoenas have been modified as overbroad (Carvel Corp. v Lefkowitz, 106 Misc 2d 284) or *268 quashed as harassing and unreasonable (People v Anaconda Wire & Cable Co., 45 Misc 2d 151, affd 23 AD2d 823).
Further, in Carlisle v Bennett (268 NY 212, 217) a case construing an almost identical investigatory statute aimed at the regulation of security transactions (General Business Law, § 353), the Court of Appeals made clear that even where there is an express legislative grant of authority to investigate the court must see that this, power is not abused: “[b]ut there are limits to the power of the Legislature. It could not confer upon an executive an arbitrary and unbridled discretion as to the scope of his investigation. However broad the statutory language may be, the discretion must be exercised within bounds circumscribed by a reasonable relation to the subject-matter under investigation and to the public purpose to be achieved”.
The Court of Appeals reached a similar conclusion in Matter of Sussman v New York State Organized Crime Task Force (39 NY2d 227) in ruling on the propriety of executive subpoenas issued pursuant to section 70-a of the Executive Law.
In determining whether the postindictment subpoenas issued here bear “a reasonable relation to the subject matter under investigation” this court feels it mandatory to take into consideration the body of case law construing the issuance of postindictment Grand Jury subpoenas. While, as stated, continuing investigations subsequent to the commencement of civil actions have been consistently upheld under the Donnelly Act, this is the first case where subpoenas have been issued subsequent to a criminal indictment. Thus the analysis of the decisions construing whether postindictment Grand Jury subpoenas were an abuse of process is instructive.
A subpoena may not be issued by a Grand Jury subsequent to the return of an indictment if its sole or dominant purpose is to prepare the pending indictment for trial as opposed to furthering a legitimate investigation (United States v Dardi, 330 F2d 316, supra; United States v Fahey, 510 F2d 302, supra; United States v Doss, 563 F2d 265; Matter of National Window Glass Workers, 287 F 219; United States v Kovaleski, 406 F Supp 267; Matter of Hynes *269 v Lerner, 44 NY2d 329, supra). In Matter of Hynes v Lerner (supra, p 333) the Court of Appeals states: “Preliminarily, it should be stated that once an indictment is issued, a Grand Jury subpoena duces tecum may not be used for the sole or dominant purpose of preparing the pending indictment for trial. Such abuse was specifically disapproved in United States v Dardi (330 F2d 316, 336, cert den 379 US 845) and constitutes a misuse of the Grand Jury process. However, where the purpose of the Grand Jury investigation is directed to other offenses, its scope should not be circumscribed and any collateral or incidental evidence from bona fide inquiries may be used by the prosecutor against the defendant at the trial of the pending indictment.”
This court perceives no reason to distinguish between postindictment office subpoenas and those issued by a Grand Jury. In fact, office subpoenas should receive stricter scrutiny because they are not under direct and immediate judicial supervision as is the case with Grand Jury subpoenas (contrast Matter of Sussman v New York State Organized Crime Task Force, 39 NY2d 227, supra, with People v Rallo, 39 NY2d 217). In addition, in the instant case testimony taken pursuant to General Business Law subpoenas was then introduced in evidence before the Grand Jury.
Therefore, in deciding whether the issuance of these postindictment subpoenas bears “a reasonable relation to the subject-matter under investigation” (Carlisle v Bennett, 268 NY 212, 217, supra) this court is of the opinion that the “dominant purpose” test should be superimposed upon the nonabatement provision of section 343 of the General Business Law. The key word here is investigation. If the “dominant purpose” of the Attorney-General in issuing the subpoena is to further a legitimate investigation his power to issue said subpoenas should not abate once an indictment is issued. If, however, the “dominant purpose” of the subpoena is to gather evidence for trial of the pending indictment then the Attorney-General is no longer investigating but attempting to freeze evidence by using the subpoena as a discovery tool. This type of practice is an abuse of process.
*270 Finally, it must be decided if the “dominant purpose” of the issued subpoenas was to further a legitimate investigation or to freeze evidence for trial. If the purpose of the subpoenas is to investigate the possibility that other crimes were committed or that other nonindicted individuals or corporations may have committed crimes, then no abuse of process has occurred (Matter of Hynes v Lerner, 44 NY2d 329, supra; Beverly v United States, 468 F2d 732; Matter of Russo, 448 F2d 369; United States v Woods, 544 F2d 242; United States v Sellaro, 514 F2d 114; United States v Gibbons, 607 F2d 1320; Matter of Grand Jury Proceedings, 586 F2d 724). To make this determination, this court, after having read the Grand Jury minutes, took an in camera offer of proof from the Attorney-General, wherein the purpose of these subpoenas was examined. This record has been sealed and preserved for appellate review. Suffice it to say that the court is clearly satisfied that the subpoenas were issued pursuant to a valid investigation and were not for the purpose of preparing the indictment for trial.
Therefore, the motion to quash the subpoenas is in all respects denied. The stay previously issued on enforcement of these subpoenas and the injunction precluding the service of other subpoenas on Dellwood employees is vacated forthwith.