[636 NYS2d 176]

In the Matter of ONCOR COMMUNICATIONS, INC., Appellant, v
STATE OF NEW YORK et al., Respondents.

Third Department, January 11, 1996

## APPEARANCES OF COUNSEL

*Couch, White, Brenner, Howard & Feigenbaum,* Albany *(Paul A. Feigenbaum* and *Keith B. Rose* of counsel), and *Roland, Fogel, Koblenz & Carr,* Albany, for appellant.

*Dennis C. Vacco, Attorney-General,* New York City *(Charlie Donaldson, Shirley Sarna, Harvey M. Berman* and *Samuel Cherniak* of counsel), for State of New York, respondent.

## OPINION OF THE COURT

MERCURE, J.

For each telephone line, the telephone service subscriber is entitled to designate the primary interexchange carrier (hereinafter PIC), i.e., the long distance carrier to whom a call is routed when the user dials "1" or accesses the operator service by dialing "0". Absent a subscriber's express written prohibition, local telephone companies are permitted to change the PIC for a particular telephone line on the unverified notification of the purported newly designated PIC, thereby providing fertile ground for the practice of unauthorized substitution, known as "slamming". As the result of consumer complaints concerning petitioner's alleged slamming and exorbitant long distance telephone charges at pay telephones in New York City and on Long Island, respondent Attorney-General undertook an investigation of petitioner's practices in the State.

In that connection, in June 1994 the Attorney-General served a subpoena duces tecum upon respondent American Telephone and Telegraph Company (hereinafter AT&T), which was at the time involved in litigation with petitioner in the United States District Court for the District of Maryland, requesting a copy of all documents received by AT&T from January 1, 1993 to date (1) indicating that a telephone line in New York had its PIC changed to petitioner without subscriber authorization, and (2) from subscribers to telephone lines in New York requesting a PIC change from petitioner to AT&T. In response, AT&T notified petitioner of the subpoena and advised the Attorney-General that it was involved in litigation with petitioner and that some of the documents in AT&T's possession or control were likely subject to a protective order that had been issued in the Federal litigation.

Petitioner then moved pursuant to CPLR 2304 to quash the Attorney-General's subpoena upon the grounds, *inter alia*, that (1) Federal law has preempted the area of interexchange carriers' presubscription practices (the process by which an end-user predesignates a PIC), (2) the subpoena lacks facts sufficient to warrant "inquisitorial action" against petitioner and is overbroad, and (3) the requested documents are the subject of a Federal court protective order. In response, the Attorney-General raised as an objection in point of law petitioner's lack of standing to make the motion except with regard to documents actually belonging to it, which AT&T obtained through discovery in the Federal court action. Supreme Court denied the motion in a thorough and well-reasoned decision articulating its agreement with the Attorney-General's position on standing and, with regard to documents belonging to petitioner, its conclusion that issuance of the subpoena was barred neither by Federal preemption nor by the Federal court protective order (165 Misc 2d 262). Petitioner now appeals.

We affirm. As a preliminary matter, we agree with Supreme Court that petitioner lacks standing to contest so much of the subpoena as directs AT&T's production of materials it obtained from parties other than petitioner. These materials are not covered by the Federal court protective order, and petitioner has made no claim or showing of a proprietary interest, confidential relationship or privilege with respect to them. That being the case, there is no valid basis for a finding of standing (*see, Matter of Norkin v Hoey,* 181 AD2d 248, 251, 253; *Matter of Congregation B'Nai Jonah v Kuriansky,* 172 AD2d 35, 37, *appeal dismissed* 79 NY2d 895; *Matter of*

*John Doe Corp. I v Blumenkopf*, 118 AD2d 279, 282). To the extent that a contrary result is suggested by this Court's prior decision in *Matter of Goldberg v Axelrod* (104 AD2d 520, *lv denied* 64 NY2d 602), we expressly overrule it.

■ Turning to the merits, we are not persuaded that the Attorney-General is preempted, by any express provision of the Communications Act of 1934 (*see*, 47 USC § 151 *et seq.*) or impliedly by virtue of the pervasive Federal regulation of the communications industry, from conducting an investigation of petitioner's presubscription practices. Initially, we do not equate service of a subpoena upon a communications carrier with "regulation" of the communications industry and, the Attorney-General having asserted no claim against petitioner, the jurisdictional question of preemption is premature. Significantly, absent a complaint and a determination as to whether the claim asserted therein is one based upon the Communications Act or regulations promulgated thereunder, Federal common law or State statutory, regulatory or decisional law, there can be no meaningful consideration of the preemption issue (*see, e.g., In re Long Distance Telecommunications Litig.*, 831 F2d 627; *Nordlicht v New York Tel. Co.*, 799 F2d 859, 861, *cert denied* 479 US 1055).

Nor do we subscribe to petitioner's implicit view that there is no action the Attorney-General could bring against petitioner based upon its presubscription practices that would not bow to Federal preemption. We are not persuaded that the decision of the Second Circuit in *Ivy Broadcasting Co. v American Tel. & Tel. Co.* (391 F2d 486), providing for exclusive Federal jurisdiction over "questions concerning the duties, charges and liabilities of telegraph or telephone companies with respect to interstate communications service" (*supra*, at 491), represents the current state of the law (*compare, Nordlicht v New York Tel. Co., supra*, at 864-865) or should be followed in any event (*see, Flanagan v Prudential-Bache Sec.*, 67 NY2d 500, 506, *cert denied* 479 US 931). A number of well-reasoned decisions support State court jurisdiction over State claims (*see, In re Long Distance Telecommunications Litig., supra*, at 633-634; *American Inmate Phone Sys. v US Sprint Communications Co. Ltd. Partnership*, 787 F Supp 852, 856-859; *Bruss Co. v Allnet Communication Servs.*, 606 F Supp 401, 409, 411; *Kellerman v MCI Telecommunications Corp.*, 112 Ill 2d 428, 493 NE2d 1045, *cert denied* 479 US 949) or actions arising under the Federal common law against interstate communications carriers (*see, Nordlicht v New York Tel. Co., supra*).

Finally, in view of the many complaints of petitioner's slamming practices, involving literally hundreds of telephone lines, we are persuaded that there is a "compelling need" for the Attorney-General to review the documents covered by the Federal court protective order (*Martindell v International Tel. & Tel. Corp.*, 594 F2d 291, 296).

CARDONA, P. J., CREW III, WHITE and PETERS, JJ., concur.

Ordered that the order is affirmed, without costs.